# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 3:05 CR 222 (MRK) |
| | : | |
| FRANK BEST | : | |

## MEMORANDUM OF DECISION

Defendant Frank Best, a convicted felon, is charged in a one count Indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mr. Best has moved to suppress the 9mm semi-automatic Ceska Zbrojovka pistol and sixteen rounds of hollow point ammunition that were seized from the vehicle that Mr. Best was driving when he was apprehended for assaulting his girlfriend on February 23, 2005. *See* Defendant's Motion to Suppress [doc. #12]; Government's Memorandum in Opposition to the Motion to Suppress [doc. #17]. After careful consideration of the parties' arguments, a telephone conference with the parties on December 2, 2005, at which Mr. Best conceded that no evidentiary hearing would be necessary,[1] oral argument on December 19, 2005, and post-argument supplemental briefing,[2] the Court DENIES Mr. Best's Motion to Suppress [doc. #12].

---

[1] No affidavit accompanied Mr. Best's motion to suppress and the only factual issue raised in the motion related to the absence of inventory search forms, which the Government provided with its response to the motion. *See* Government's Opposition to Motion to Suppress and Opposition to Request for Evidentiary Hearing [doc. #17], Ex. 1. Therefore, there was no need (or basis) for an evidentiary hearing.

[2] Following argument, each party filed supplemental briefs. *See* Supplemental Brief in Support of Motion to Suppress Evidence [doc. #27]; Government's Supplemental Memorandum in Opposition to Motion to Suppress [doc. #25].

1

**I.**

The facts relevant to the Motion to Suppress are as follows. On February 23, 2005, Officer Kenneth McKenna of the Bridgeport Police Department was assigned to investigate a report that Mr. Best had assaulted his girlfriend. The victim of the assault provided Officer McKenna with a description of the car Mr. Best was operating and, at about 6:30 p.m., Officer McKenna radioed the description of Mr. Best's car to all police units in Bridgeport and asked that Mr. Best be picked up and held. Hearing the citywide broadcast, Officers Carr and Borrico recognized Mr. Best's vehicle parked in a convenience store parking lot across the street from the P.T. Barnum Housing Project, an area of Bridgeport that has been the scene of narcotics trafficking and violent crimes. After confirming the vehicle's license plate, the officers approached the car and saw an individual who matched the description of Mr. Best. The operator of the car also confirmed that his name was Frank Best. The officers removed Mr. Best from his vehicle and moved him to the rear of their cruiser pending the arrival of Officer McKenna. Wayne Jones, a passenger in Mr. Best's car, was also placed in the rear of the cruiser. Officer McKenna arrived shortly thereafter and told Officer Carr that Mr. Best was under arrest for assaulting his girlfriend. Officer McKenna also asked that Mr. Best's vehicle be towed for safekeeping. While waiting for a tow truck to arrive, Officers Borrico and Carr conducted an inventory search of Mr. Best's vehicle in accordance with Bridgeport Police Department policy. During that search, which occurred within six minutes or so after Mr. Best's arrest and while he was still on the scene in the police cruiser, the officers discovered the weapon and ammunition that Mr. Best seeks to suppress.[3] At that point, Mr. Jones, who also was still in the

---

[3] In addition, officers found a glassine fold on the floor of the car with an off-white powdery substance later determined to be heroin.

2

police cruiser, was also placed under arrest.

## II.

Initially, Mr. Best focused his challenge principally on the propriety of the inventory search itself, as opposed to Officer McKenna's decision to tow and impound the vehicle following Mr. Best's arrest. *See* Motion to Suppress Evidence [doc. #12]. However, at oral argument and in post-argument briefing, Mr. Best also challenged the legality of the initial decision to impound the vehicle following Mr. Best's arrest. *See* Supplemental Brief in Support of Motion to Suppress Evidence [doc. #27]. Therefore, the Court first considers Mr. Best's arguments regarding the legality of the decision to impound Mr. Best's vehicle, and then turns to the propriety of the inventory search.[4]

### A.

Police may impound vehicles "[i]n the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions.'" *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). Police officers may exercise their discretion in deciding whether to impound a vehicle, so long as that discretion is "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987).

Here, the Government asserts that Officer McKenna decided to impound Mr. Best's vehicle for safekeeping following his arrest and that his decision to do so was consistent with the towing and

---

[4] The Government also argues that the search of the vehicle was proper as a search incident to arrest and as pursuant to the "automobile exception" to the Fourth Amendment's warrant requirement based upon the existence of probable cause to believe that the automobile contained evidence or contraband. *See* Government's Opposition to Motion to Suppress [doc. #17]; Government's Supplemental Memorandum in Opposition to Motion to Suppress [doc. #25]. In view of the Court's resolution of the issues relating to the inventory search, the Court need not, and does not, address the Government's alternate arguments in support of the vehicle search.

impoundment policy of the Bridgeport Police Department. In particular, the Government notes that, at the time of his arrest, Mr. Best's vehicle was parked in a high crime area in the City of Bridgeport and, if not impounded, would have been left unattended and therefore subject to vandalism or theft. Recently in another case, this Court had occasion to quote the Bridgeport Police Department's Inventory Tow Policy. That policy states that it is the standard practice of the Department to inventory all vehicles taken into policy custody and that a "vehicle is considered to be in police custody when impounded as evidence, incidental to an arrest, or *whenever the Department maintains a continuing responsibility for the safekeeping of the vehicle and its contents*." *United States v. Hill*, No. 3:05CR67(MRK), 2005 WL 3113206, at *5 (D. Conn. 2005) (emphasis added).

Mr. Best does not dispute that the area in which the arrest occurred was a high crime area or that the Bridgeport Police Department has a policy of towing and impounding vehicles for safekeeping when the driver of the vehicle is arrested.[5] Rather than contesting the impoundment on the ground that it was unauthorized by Department policy or that the vehicle was, in fact, not at risk of being vandalized or stolen, Mr. Best argues instead that the Department's policy of impounding vehicles for safekeeping is itself unlawful. In particular, relying on a 2-1 decision of the Seventh Circuit in *United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996), Mr. Best asserts that "[w]hile

---

[5] At argument, Mr. Hill's counsel provided the Court with copies of Bridgeport ordinances regarding towing and pointed out that section 10.24.020 (entitled "Vehicles subject to towing and impoundment") does not mention towing and impoundment incident to arrest. The Court declines to accept Mr. Best's implied suggestion that the Police Department lacked statutory authority to adopt an impoundment policy calling for impoundment of vehicles incident to arrest or for safekeeping. Section 10.20.030 of the City's ordinances expressly provides that the ordinance shall govern towing of vehicles, "whether or not involved in an accident," among other circumstances "[i]ncidental to an arrest." *See* City of Bridgeport Municipal Code, Title 10, § 10.20.030, *at* http://ci.bridgeport.ct.us/_codes/Municipal_Code/. Moreover, section 10.24.100 states that the Board of Police Commissions shall "adopt such rules and regulations as may be necessary for the operation of this chapter." *Id.* § 10.24.100.

protection of the arrestee's property and municipal liability are both valid reasons to conduct an inventory *after* a legal impoundment, they do not establish the *a priori* legitimacy of the seizure" and that "police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods." *Id.* at 352 (emphasis added). In short, Mr. Best contends that in view of the fact that his car was not illegally parked, not a nuisance to traffic, not involved in an accident, and not evidence of a crime, and in further view of the fact that the car was parked in a commercial lot and not a City street, the officers should simply have left the car where it was parked and had no legitimate justification for impounding the car for safekeeping while Mr. Best journeyed to the police station for processing.

The Second Circuit does not appear to have addressed the precise issue raised by Mr. Best. However, other circuits have, and they have either distinguished the Seventh Circuit's decision in *Duguay* or outright rejected it. Thus, the Eighth Circuit recently observed that, contrary to *Duguay*, "we (as well as other circuit courts) have considered the likelihood of theft or vandalism when determining the reasonableness of an impoundment." *United States v. Kanatzar*, 370 F.3d 810, 813 (8th Cir. 2004) (citing *United States v. Garner*, 181 F.3d 988, 992 (8th Cir. 1999); *United States v. Kornegay*, 885 F.2d 713, 716 (10th Cir. 1989); *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980)). Accordingly, the Eighth Circuit held that a reasonable risk of damage or vandalism is sufficient to justify police impound of a vehicle following the arrest of the driver.

As noted, the Eighth Circuit is not alone in holding that a legitimate concern for the safekeeping of an arrestee's vehicle can justify a police decision to tow and impound the vehicle. For example, in *United States v. Johnson*, 734 F.2d 503 (10th Cir. 1984), the Tenth Circuit held that it was reasonable for police to tow and impound a vehicle lawfully parked (like Mr. Best's) in a

5

commercial parking lot following arrest of the driver, who was intoxicated.  The court stated,

> [T]he police decided to have the car towed because the owner was clearly unable to
> drive and they were concerned about vandalism. This is an appropriate exercise of
> the 'community caretaking functions' which the police have a responsibility to
> discharge.  To this end the police followed their routine procedure for securing and
> inventorying the automobile's contents.

*Id.* at 505 (quoting *Opperman*, 428 U.S. at 368-69 ) (internal citations omitted); *accord United States*

*v. Walker*, 81 Fed. Appx. 294, 297 (10th Cir. 2003) (reasonable to tow vehicle from lot of gas station

because driver "was alone at the time of his arrest, there was no one immediately available to move

his car to a safe location . . . [and] the vehicle was located in area where it could have inhibited

business or been subject to theft or vandalism");[6] *United States v. Andas-Gallardo*, 3 Fed. Appx.

959, 963 (10th Cir. 2001) (police acted reasonably in impounding a vehicle lawfully parked in a

commercial lot that "did not pose a public hazard or nuisance," because police had no indication how

long it would take arrestee to arrange its removal, or whether the vehicle would be safe in the

interim, and acted pursuant to a standard policy of protecting vehicle and contents until the arrested

individual could take possession); *see also United States v. Jensen*, 425 F.3d 698, 706 (9th Cir.

2005) ("Once the arrest was made, the doctrine allowed law enforcement officers to seize and

remove any vehicle which may impede traffic, threaten public safety, *or be subject to vandalism*")

(emphasis added); *Hallstrom v. Garden City*, 991 F.2d 1473, 1477, n.4 (9th Cir. 1993)

(impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft"

was reasonable under the community caretaking function); *United States v. Rodriguez-Morales*, 929

F.2d 780, 785 (1st Cir. 1991) (police acted reasonably in removing vehicle from the shoulder of a

busy highway "not only [because it] would have posed a safety threat, but also [because it] would

---

[6] The Tenth Circuit permits citation to its "unpublished" decisions.  10th Cir. R. 36.3.

have been easy prey for vandals"); *Staller,* 616 F.2d at 1290 (reasonable to impound vehicle parked in a mall lot because "[a]lthough [the] vehicle was lawfully parked and presented no apparent hazard to public safety, the officers were aware that a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft.").

Similarly, in *United States v. Mundy*, 806 F. Supp. 373 (E.D.N.Y. 1992), Judge Jack Weinstein observed that "[c]ourts give deference to police caretaking procedures designed to . . . protect vehicles . . . in police custody. This rule is particularly important where a car would be unattended, even if legally parked, and the police . . . believe that a suspect will be separated from his vehicle for a long period of time." *Id.* at 376. Accordingly, Judge Weinstein upheld impoundment of an arrested individual's vehicle, which was parked in a hotel lot, as a proper exercise of the police community caretaking function:

> Once the defendants were arrested, the agents had no way of knowing how long the defendants would be detained. Had they left the car in the hotel parking lot, it would have been unattended for an indeterminate amount of time, at night, in a high crime area. . . . It was necessary for the agents to seize the car if for no other reason than to protect the car and its contents from vandalism or theft. . . . Given a choice between leaving a vehicle where it is, in circumstances such as existed here, and taking it into custody, the latter is the better choice.

*Id.* (internal citations omitted).

The Court is persuaded to follow the above-mentioned precedents rather than the Seventh Circuit's decision in *Duguay* for several reasons. For one, *Duguay* is factually distinguishable from this case. The majority in *Duguay* explicitly found that police had not acted pursuant to a standard procedure in deciding to impound the vehicle in question. *See Duguay*, 93 F.3d at 351 ("we are not satisfied that the Alton Police Department employs a standardized impoundment procedure."). Therefore, it is not clear to this Court what the *Duguay* majority would have held had police acted

in accordance with a standard policy. *See United States v. Smith,* No. CRIM.A.05-0257, 2005 WL 2746657, at *2 (E.D. Pa. Oct. 24, 2005) (distinguishing *Duguay* on the ground that police had acted pursuant to a "standardized routine").   Here, by contrast, there is no question that Officer McKenna acted in accordance with standard department policy in ordering the towing and impoundment of the vehicle for safekeeping following Mr. Best's arrest.

Furthermore, in *Duguay*, the arrested individual was merely a passenger in the impounded automobile and both the driver and the defendant's brother (a son of the title owner) were present at the time of the arrest and fully prepared to remove the vehicle for safekeeping. *Duguay*, 93 F.3d at 353.  The majority in *Duguay* expressly noted that "[i]mpoundments by Illinois police have been affirmed in many circumstances where the arrestee could not provide for the speedy and efficient removal of the car, such as where the driver is the sole occupant and is legitimately arrested." *Id.* at 354 n.2; *see United States v. Hodge*, 54 Fed. Appx. 354, 355 (3d Cir. 2002) (distinguishing *Duguay* where there was no one available to remove a vehicle).[7]  Here, there is no indication that anyone was available to remove for safekeeping the vehicle Mr. Best had been driving.  Although Mr. Jones was a passenger in the automobile, Mr. Best has not claimed that Mr. Jones was a licensed driver, had permission to use the car, or was otherwise willing and able to remove the car for safekeeping.

In any event, to the extent that Mr. Best urges this Court to hold on the basis of *Duguay* that it was not permissible for Officer McKenna to impound the vehicle for safekeeping, the Court declines to do so.  As the Supreme Court has repeatedly emphasized, the touchstone of the Fourth

---

[7] The Third Circuit does not prohibit citation to its non-precedential opinions. *See* 3d Cir. App. R. 28.3(a); Third Circuit Internal Operating Procedure 5.3.

Amendment is reasonableness.  *See, e.g., United States v. Ramirez*, 523 U.S. 65, 66 (1998); *Pennsylvania v. Mims*, 434 U.S. 106, 108-09 (1977).  In the Court's view, it is eminently reasonable for the Bridgeport Police Department to have adopted a standard policy that recognizes its officers' "continuing responsibility for the safekeeping of the vehicle and its contents" following a driver's arrest.  Safeguarding individuals and their property from harm is the essence of the "community caretaking function" of the police. *See United States v. Miner*, 956 F.2d 397, 399 (2d Cir. 1992) (it is part of the "community caretaking function" of the police to protect a motor vehicle from vandalism; *United States v. Markland*, 635 F.2d 174, 176 (2d Cir. 1980) ("Police have a duty to protect both the lives and the property of citizens.").

Not only is the Bridgeport policy itself reasonable, but it was reasonably implemented in this case.  The vehicle Mr. Best was driving was parked at night in a high crime area.  Mr. Best himself had been arrested and police could not be certain when he would be able to return to his car or make arrangements to have it removed for safekeeping. Police were, therefore, rightly concerned about vandalism or theft of the car or its contents, and Mr. Best does not seriously contend otherwise.  Nor is there any basis for the Court to believe that the police were acting in bad faith in impounding the vehicle, or were using risk of harm to the vehicle as a pretext for impounding and searching the vehicle.  "Given the choice between leaving a vehicle where it is, in circumstances such as existed here, and taking it into custody, the latter is the better choice."  *Mundy*, 806 F. Supp. at 377.

That the vehicle was parked in a commercial parking lot instead of on a public street does not materially change the calculus. *See Andas-Gallardo*, 3 Fed. Appx. at 963; *Staller,* 616 F.2d at

1290.[8]  To be sure, this was not a situation where a vehicle parked by the side of the road posed a hazard to traffic and had to be removed to prevent accidents and to maintain the safe flow of traffic. However, the vehicle Mr. Best was driving was at risk of theft or vandalism even in the commercial lot in which it was parked.  Moreover, the police had no indication that the owners of the mini-mart were willing to have Mr. Best leave his vehicle in their lot indefinitely while he dealt with his arrest and its aftermath.   And, unlike *Duguay*,  there is nothing in the record to show that Mr. Best could have arranged for the safe removal of the vehicle while he was otherwise occupied at the station house. In this regard, the Court notes that even the majority in *Duguay* stated that a "decision to impound an automobile . . . is valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares *or parking lots*."  *Duguay*, 93 F.3d at 353 (emphasis added).

Accordingly, the Court concludes that the officers' decision to impound and tow the vehicle in which Mr. Best had been driving was made pursuant to the Police Department's standard policy of safeguarding an arrestee's vehicle and that the officers' decision was reasonable in the circumstances.  As a consequence, the Court holds that the seizure and impoundment of the vehicle following Mr. Best's arrest did not violate the Fourth Amendment.

**B.**

Turning next to the validity of the inventory search undertaken following the decision to impound and tow the vehicle, the Court finds that the search also was conducted pursuant to

---

[8]  Mr. Best argues that there is no limit to the Bridgeport Police Department's policy and that it might conceivably justify impounding a vehicle that was parked in an individual's driveway or in a leased parking spot in a commercial garage.  Neither of those two scenarios are presented by this case, and nothing in this Court's opinion is intended to address those circumstances.

Bridgeport Police Department standard policy and that it was lawful.  When, as here, a vehicle is lawfully seized, police may conduct an inventory search of its contents, so long as they do so "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity," *Florida v. Wells*, 495 U.S. 1, 4 (1990), rather than as "a pretext concealing an investigatory police motive," *Opperman*, 428 U.S. at 376.  Inventory searches "'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" *United States v. Griffiths*, 47 F.3d 74, 78 (2d Cir. 1995) (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)).

Bridgeport police policy requires officers conducting an inventory search to complete a form detailing information about the vehicle, noting any damage to it, and listing items found within it. *See Hill*, 2005 WL 3320567 at *15 ("'The Officer charged with the responsibility of inventorying a vehicle in policy custody shall complete the standard Vehicle Inspection/Inventory Form.'") (quoting Bridgeport Police Department Inventory Tow Policy ¶ 4.5a.10).  In his original motion to suppress, Mr. Best argued that "the police described the search as an inventory but no document in the nature of an inventory was disclosed in the discovery provided to the defendant." Memorandum in Support of Motion to Suppress [doc. #13] at 2. However, in response to Mr. Best's Motion to Suppress, the Government produced the completed inventory search form for Mr. Best's vehicle. *See* Vehicle Impound Form, Government's Memorandum in Opposition to the Motion to Suppress [doc. #17] Exhibit 2.

The Vehicle Impound Form submitted by the Government appears to have been properly completed, with a full vehicle description comprising the car's make, model, year, color, vehicle identification number, and license plate information. The form notes normal wear and tear on the

11

vehicle, and the presence of a radio and keys in the vehicle. *Id.* Although the firearm and ammunition are not listed under "Vehicle Inventory," this Court recently noted that items removed during an inventory search are not generally listed on the inventory forms, *see Hill*, 2005 WL 3320567 at *15, and Mr. Best has not suggested otherwise.

### III.

For the foregoing reasons, the Court DENIES Mr. Best's Motion to Suppress [doc. #12].


IT IS SO ORDERED.


/s/_____Mark R. Kravitz_____
United States District Judge.


**Dated at New Haven, Connecticut: <u>February 14, 2006</u>.**